1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
9                   AT SEATTLE

10   MONICA NAVARRO PIMENTEL,              CASE NO. C11-119 MJP
     individually and on behalf of a class of
11   similarly situated persons,            ORDER GRANTING CLASS
                                            CERTIFICATION AND
12                          Plaintiff,      TEMPORARY RESTRAINING
                                            ORDER
13           v.

14   SUSAN DREYFUS, in her official
     capacity as Secretary of the Washington
15   State Department of Social and Health
     Services,
16
                            Defendant.
17

18
          This comes before the Court on Plaintiff's motion for a temporary restraining order

19
     ("TRO") and preliminary injunction (Dkt. No. 2) and Plaintiff's motion for class certification

20
     (Dkt. No. 5).  Having reviewed the motions, the responses (Dkt. No. 13 and 15), all documents

21
     submitted with the briefing, and having heard oral argument on January 27, 2011 (Dkt. No. 9),

22
     the Court GRANTS Plaintiff's motion for a TRO and class certification.

23
     \\

24

ORDER GRANTING CLASS CERTIFICATION
AND TEMPORARY RESTRAINING ORDER- 1

**Background**

   A.  <u>Statutory Framework</u>

      The federal food stamp program now known as the Supplemental Nutrition Assistance Program ("SNAP") was created in 1964.  <u>See</u> 7 U.S.C. § 2011 *et seq.*  SNAP provided federal funding to states who administered distribution of the federal food benefits.

      In 1996, Congress passed the Personal Responsibility and Work Reconciliation Act ("PRWORA"), which severely restricted the eligibility of legal immigrants for SNAP benefits.  8 U.S.C. § 1612 and § 1613.  After PRWORA, legal immigrants no longer receive federal-funded food assistance.  However, in its place, Congress authorized states to voluntarily provide state-funded food assistance to legal immigrants rendered ineligible by PRWORA.  7 U.S.C. § 2016(i).

      In 1997, Washington exercised its option to continue to provide legal immigrants with state-funded food assistance and created the Food Assistance Program for Legal Immigrants ("FAP").  RCW 74.08A.120.  In other words, the Department of Social and Health Services ("DSHS") structured FAP so that households with aliens rendered ineligible by PRWORA would receive both state-funded Basic Food assistance and federal-funded food assistance, provided the total benefits any household received did not exceed the federal food stamp amount for that household.  <u>See</u> Wash. St. Reg. 97-20-124 (Oct. 1, 1997); WAC 388-424-0025.

      On September 13, 2010, Governor Gregoire issued Executive Order 10-04 mandating a 6.3 percent reduction to general fund-state appropriations due to declining state revenue.  In September 2010, DSHS announced it would repeal FAP due to budget cuts.  Wash. St. Reg. 10-19-135.  On November 17, 2010, DSHS published a Proposed Rule amending FAP rules.  Wash. St. Reg. 10-23-109.  On December 29, 2010, the Department filed a permanent rule.  Wash. St.

1    Reg. 11-02-035.  The result of DSHS's rule-making is that the state food assistance program will

2    cease to exist, effective February 1, 2011.  Id.

3        B.  Complaint Allegations

4            Plaintiff Monica Navarro Pimentel ("Pimentel") is a legal immigrant with three children.

5    She currently receives food benefits on behalf of her household through the federally-funded

6    food assistance program and through state-funded food assistance under FAP.  (Pimentel Decl. ¶

7    11.)   Specifically, Pimentel receives federally-funded food assistance on behalf of her two

8    youngest children who are United States citizens and receives state-funded food assistance under

9    FAP because her alien status renders her ineligible for federal food assistance. (Id.)  Both food

10    assistance programs are administered by Washington and she, therefore, receives them together.

11    (Id.)  Prior to this litigation, she did not know her food benefits were funded separately.  (Id.)

12            On January 18, 2011, DSHS mailed notices to recipients that their food assistance would

13    be terminating or reduced because there was no funding for FAP.  (Pimentel Decl., Ex. A.)

14    Pimentel received notice on January 20, 2011.  (Id. at ¶ 17.)  The notice stated her household's

15    benefits would be reduced from $647 to $341 per month.  (Id. at 9.)  The notice did not explain

16    why ineligible household members did not meet the citizenship or alien status requirements for

17    the federal food assistance program or indicate what information or verification DSHS relied

18    upon in reaching this determination.  (See Pimentel Decl. Ex. A.)

19    **Analysis**

20        A.  Class Certification

21            Plaintiff seeks to represent two classes of individuals:

22            (1)  All Washington state residents who

23

24

(a) were receiving state-funded Basic Food benefits under FAP and received

notification that these benefits would terminate on January 31, 2011 because

there was no funding for the program; or

(b) in the future would be eligible for the Washington State Basic Food Program,

but for the fact that they do not meet citizenship and alien status requirements

of WAC 388-424-0020 and who are either qualified aliens or Permanently

Residing Under Color of Law in the United States (hereinafter referred to as

"Class").

(2) For purposes of the due process claim, Washington state residents who

(a) are receiving state-funded Basic Food benefits now and whose benefits are

being reduced or terminated effective February 1, 2011.  (hereinafter referred

to as "Due Process Subclass").

Defendant does not object to certification of the Class.  (Dkt. No. 15.)  But Defendant

does object to certification of the Due Process Subclass.  (Id.).  Plaintiff indicated at the hearing

that the language of the Due Process Subclass may require clarification.  Plaintiff is granted

leave to amend the Due Process Subclass, however, the Court still considers here the classes

defined in briefing.

a.   Standard

Rule 23 "provides a one-size-fits-all formula for deciding the class-action question."

Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 130 S.Ct. 1431, 1437 (2010).  A class

action may be maintained if the party seeking certification meets all four criteria in Rule 23(a)

and at least one of the three categories of Rule 23(b).  Rule 23(a) requires the Court to find that:

1 | (1) the class is so numerous that joinder of all members is impracticable; (2) there are

2 | questions of law or fact common to the class; (3) the claims or defenses of the

3 | representative parties are typical of the claims or defenses of the class; and (4) the

4 | representative parties will fairly and adequately protect the interests of the class.

5 | Fed. R. Civ. P. 23(a).

6 |        Plaintiffs here seek certification under Rule 23(b)(2), which requires the Court to find

7 | that "the party opposing the class has acted or refused to act on grounds that apply generally to

8 | the class, so that final injunctive relief or corresponding declaratory relief is appropriate resting

9 | the class as a whole."

10 |        The Ninth Circuit recently reaffirmed that "at the class certification stage, while <u>Eisen [v.

11 | Carlisle & Jacquelin</u>, 417 U.S. 156 (1974)] prohibits a court from making determinations on the

12 | merits that do not overlap with the Rule 23 inquiry, district courts must make determinations that

13 | each requirement of Rule 23 is actually met." <u>Dukes v. Wal-Mart Stores, Inc.</u>, 603 F.3d 571, 590

14 | (9th Cir. 2010) (en banc). This is to be a "rigorous analysis to ensure that the prerequisites of

15 | Rule 23 have been satisfied." <u>Id.</u> at 594. The Ninth Circuit rejected a "significant proof"

16 | requirement to be imposed on a plaintiff seeking certification of a class. <u>Id.</u> at 595.

17 |        1.   <u>Numerosity</u>

18 |        Plaintiff has satisfied the numerosity requirement for both the Class and Due Process

19 | Subclass. The size of the class is approximately 10,000 households comprised of more than

20 | 30,000 persons. (Provenzano Decl. ¶ 20; Ex. G). Approximately 14,350 persons in these

21 | households will no longer be eligible for state-funded Basic Food if FAP is terminated. (<u>Id.</u>)

22 | The Court finds the proposed Class and Due Process Subclass are sufficiently numerous as to

23 | make joinder of all plaintiffs impractical. <u>See</u> Fed. R. Civ. P. 23(a)(1).

24 |

1

2.      Common questions of law or fact

2

There are common questions of law and fact applicable to all members of the proposed

3

Class and Due Process Subclass.  Common questions facing all members of the proposed classes

4

include: (1) whether DSHS's elimination of FAP and continuation of Basic Food benefits to U.S.

5

citizens and certain qualified aliens violates the Equal Protection Clause; (2) whether the notices

6

that DSHS sent Due Process Subclass terminating or reducing their food assistance effective

7

February 1, 2011 were inadequate and violated the Due Process Clause; (3) whether the Class

8

and Due Process Subclass are entitled to declaratory relief under 42 U.S.C. § 1983.  The Court

9

finds sufficient common questions of fact and law to satisfy Rule 23(a)(2).

10

3.      Typicality

11

The Court finds Plaintiffs' claims to be typical of those of the proposed Class and Due

12

Process Subclass.  DSHS sent a standardized notice to Plaintiff and other members of the Class

13

and Due Process Subclass purporting to terminate their state-funded Basic Food benefits under

14

FAP.  (Pimentel Decl. Ex. A).  Plaintiff is in danger of losing her FAP benefits after receiving a

15

notice alleged to be defective.  These allegations are common to the proposed class.  The Court

16

finds typicality is satisfied.  Fed. R. Civ. P. 23(a)(3).

17

4.      Adequacy

18

The Court is satisfied the named individuals and class counsel will represent the Class

19

and Due Process Subclass.  Fed. R. Civ. P. 23(a)(4).  The main inquiry here is whether the

20

named plaintiffs and counsel have conflicts of interest with other class members, and whether the

21

named Plaintiffs will prosecute the action vigorously on behalf of the class.  Hanlon v. Chrysler

22

Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).

23

24

ORDER GRANTING CLASS CERTIFICATION
AND TEMPORARY RESTRAINING ORDER- 6

1    Here, Columbia Legal Services exists to represent the interests of those within the

2    proposed class and has extensive experience in class action challenges and public assistance

3    litigation.  The Court finds the class counsel to be adequate.

4    With respect to the named Plaintiff, Ms. Pimentel has demonstrated her interest in

5    prosecuting this case by filing the instant complaint.  To the extent Defendant argues the Due

6    Process Subclass should not be certified because Ms. Pimentel lacks standing, the argument fails.

7    Defendant seems to believe Ms. Pimentel cannot challenge the notice's adequacy because the

8    notices informed her of FAP's termination and not of her ineligibility.  But regardless if a

9    program is terminated altogether or merely changed so as to render a recipient ineligible, the

10   effect on the recipient is the same—the recipient's benefits will be terminated or reduced.  A

11   recipient suffers injury when DSHS fails to provide adequate notice for the reason their benefits

12   were terminated or reduced.  The Court finds Ms. Pimentel has standing and is adequate to

13   represent the Class and Due Process Subclass.

14

15       5.       Certification under Rule 23(b)(2)

16   Plaintiffs here seek injunctive and declaratory relief that, if granted, will apply equally to

17   all members of the proposed Class and Due Process Subclass.  DSHS's actions here apply to

18   those in the proposed classes that received inadequate advanced notice and whose benefits will

19   be terminated or reduced.  The Court finds the requirements of Rule 23(b)(2) easily satisfied.

20

21   B.  Temporary Restraining Order

22       a.       Standard

23   A plaintiff seeking injunctive relief "must establish that he is likely to succeed on the

24   merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

ORDER GRANTING CLASS CERTIFICATION
AND TEMPORARY RESTRAINING ORDER- 7

1    balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v.

2    Natural Resources Defense Council, Inc., 129 S. Ct. 365, 374 (2008) (rejecting the Ninth

3    Circuit's approval of an injunction when plaintiffs only demonstrated the "possibility" of

4    irreparable harm); see also Alliance for Wild Rockies v. Cottrell, ___ F.3d ___, No. 09-35756,

5    2010 WL 2926463, at *3-5 (9th Cir. Jul. 28, 2010) (holding the Ninth Circuit's "sliding scale"

6    approach continued to be valid after Winter).

7              b.   Likelihood of Success on the Merits

8                   i.   Equal Protection

9        Federal classifications based on alienage are subject to rational basis review.  Matthews

10   v. Diaz, 426 U.S. 67 (1976).  But state classifications based on alienage are generally subject to

11   strict scrutiny.  Bernal v. Fainter, 467 U.S. 217, 227-28 (1984).  Only when Congress has

12   established a uniform rule regarding alienage for states to follow is the state's action in following

13   that rule also subject to rational basis review.  Plyler v. Doe, 457 U.S. 202, 219 n. 19 (1982).

14       Here, Congress has not enacted a uniform rule for states to follow in administering their

15   state-funded food assistance program.  In other words, this is different from Sudomir v.

16   McMahon, 767 F.2d 1456 (9th Cir. 1985).  Congress has not defined a uniform rule regarding

17   eligibility for state-funded food programs filling the gap left after PRWORA.  In Sudomir v.

18   McMahon, the Ninth Circuit found Congress established a uniform law under the Aid to

19   Families with Dependent Children ("AFDC") barring states from providing welfare to aliens

20   who had applied for, but not yet received, political asylum. Id.  Specifically, the law provided

21   that to be eligible for the AFDC program "the individual must be . . . an alien . . . permanently

22   residing in the United States under color of law." Id. at 1466 (quoting 42 U.S.C.§ 602(a)(33)

23   prior to its amendment).  In contrast, here, Congress merely states, "a State is authorized to

24

1    determine the eligibility for any State public benefits of [qualified aliens]."  8 U.S.C. § 1622(a);

2    see also Ehrlich v. Perez, 908 A.2d 1220, 1244 (Md. 2006)(finding PRWORA prescribes no

3    uniform rule and applying strict scrutiny).  This is a broad grant of discretion and not a uniform

4    policy regarding eligibility; therefore, it must meet strict scrutiny.

5         Defendants make three arguments for rational basis review; none of which are

6    persuasive.  First, Defendants contend courts routinely uphold federal law restricting state-

7    administered federal benefits to specific legal aliens under rational basis review.  See, e.g.,

8    Aleman v. Glickman, 217 F.3d 1191, 1197 (9th Cir. 2000).  While this is true, it is irrelevant.

9    Courts have applied rational basis review for alienage classifications used in administering

10   federally-funded benefits subject to federal alienage classifications.  The program challenged

11   here is a state-funded benefit.   As discussed above, state-funded benefits are subject to strict

12   scrutiny.

13        Second, Defendants argue there is no Equal Protection violation because the state-funded

14   food assistance program will no longer exist and DSHS will only administer federally-funded

15   food benefits based on federal alien classifications. Defendant's argument misses the point.

16   Plaintiff is alleging DSHS's decision to eliminate the state-funded food assistance program while

17   continuing to administer other food assistance programs to U.S. citizens and others itself violates

18   Equal Protection.  Regardless of whether the state continues to administer a federally-funded

19   food assistance program based on federal alien classifications, DSHS's decision to cut the state-

20   funded program benefitting aliens exclusively is subject to strict scrutiny.

21        Third, Defendants argue strict scrutiny only applies when states exercise discretionary

22   authority inconsistent with the uniform law set by Congress.  This argument is unpersuasive.  As

23   discussed above, strict scrutiny is the default with respect to state classifications based on

24

ORDER GRANTING CLASS CERTIFICATION
AND TEMPORARY RESTRAINING ORDER- 9

1  alienage.  Only if a uniform law set by Congress authorizes states to make decisions regarding

2  the state-funded assistance programs would rational basis apply.  Since PRWORA provides no

3  uniform rule when states subsequently elect to provide state-funded food assistance, strict

4  scrutiny applies.  See Aliessa ex rel Favad v. Novello, 96 N.Y.2d 418 (N.Y. 2001)(finding

5  PRWORA prescribes no uniform rule such that state-funded Medicaid program's exclusion of

6  aliens was subject to strict scrutiny); Korab v. Koller, 2010 WL 5158883 (D. Hawai'i

7  2010)(finding PRWORA "creates neither a federal classification nor a uniform federal policy"

8  regarding state-funded benefits).  Here, DSHS exercised its discretionary authority under 8

9  U.S.C. § 1622(a) when cutting FAP.  This decision is subject to strict scrutiny.

10      Under strict scrutiny, Plaintiff has established a likelihood of success on the merits.  State

11  budgetary considerations are not a compelling interest for a state to discriminate against aliens or

12  immigrants.

13              ii.  Due Process

14      Defendant argues Plaintiff is not likely to succeed on the merits of her Due Process claim

15  because (1) relaxed Due Process standards apply and (2) Plaintiff lacks standing to challenge the

16  notice.  Neither argument is persuasive.

17      The termination of welfare benefits "involves state action that adjudicates important

18  rights" and the state's conduct must comport with the requirements of due process.  Goldberg v.

19  Kelly, 397 U.S. 254, 261 (1970).  To determine whether a given procedure is constitutionally

20  sufficient, the Court must consider (1) the private interest implicated by the state action, (2) the

21  "risk of an erroneous deprivation of such interest through the procedures used, and the probable

22  value, if any, of additional or substitute procedural safeguards," and (3) the state's interest,

23  "including the fiscal and administrative burdens" that alternative procedures would require.

24

1   Mathews v. Eldridge, 424 U.S. 319, 335 (1976); see also Greene v. Babbitt, 64 F.3d 1266, 1274

2   (9th Cir. 1995).  In the context of public benefits, a notice of termination "must be reasonably

3   calculated to apprise the claimants of the action taken and afford them an opportunity to present

4   their objections."  Rodriguez v. Chen, 985 F. Supp. 1189, 1194 (D. Ariz. 1996).

5          Here, DSHS's notice likely violated Due Process.  The notices failed to identify those

6   members of the household ineligible due to their alien status and to explain why these members

7   did not meet the alien status requirements.  In addition, the notices failed to indicate what

8   information or verification DSHS relied on to reach its determination or describe how DSHS

9   pro-rated ineligible member's income or allowable expenses or otherwise adequately set forth

10  the income, deduction, and expense figures used in calculating recipients' benefits.

11         While Defendants believe "individualized notice is not required when benefits are

12  terminated by a change in the law rather than a change in an individual's circumstances," the

13  argument is without merit.  In Atkins v. Parker, the Court held recipients of the federal food

14  stamp program had no greater right to advance notice of the change in program than did "any

15  other voters." 472 U.S. 115 (1985).  But Atkins involved a substantive change to the program

16  mandated by Congress.  The Court observed, "a sufficient grace period" provided those affected

17  by the change in law with an adequate opportunity to become familiar with it.  Id. at 130.  Here,

18  the decision to end FAP was made by a state agency's rule-making in the waning days of 2010.

19  Although DSHS argues it acts in a legislative capacity when engaging in rule-making, this is

20  wholly different than Atkins.  Since Plaintiff and other class members do not have the

21  opportunity to express their objections by voting DSHS out of office, the notices are subject to

22  due process standards.

23

24

1         To the extent Defendant argues Plaintiff lacks standing, the argument again fails.

2  Plaintiff has standing to challenge the adequacy of notice regarding FAP's termination.  While

3  the program is scheduled to terminate and issues of eligibility may be moot, Plaintiff was still

4  harmed by DSHS's failure to explain the reduction of her household's benefits from $647 to

5  $341.  Telling Plaintiff and other class members simply that the state-funded food assistance

6  program was cut does not adequately explain the <u>amount</u> their food benefits were reduced by.  In

7  fact, Plaintiff appears to have only recently learned through this litigation that her food benefits

8  are funded separately by federal and state resources with different eligibility requirements.

9  (Pimentel Decl. ¶ 11.)  Since Plaintiff has suffered an injury in fact that is traceable to DSHS's

10  inadequate notice and it is likely that the injury will be redressed by injunctive relief, Plaintiff

11  has standing to bring the Due Process claim.

12         The Court finds Plaintiff has shown a likelihood of success on the merits of her Due

13  Process claim.

14        c.   <u>Irreparable Harm</u>

15         Plaintiff has demonstrated, and Defendants do not contest, that Plaintiff is in danger of

16  irreparable harm.  As the Supreme Court noted in <u>Goldberg v. Kelly</u>, 397 U.S. 254, 261 (1970),

17  public assistance satisfies a "brutal need."  Denial of food benefits of any member of the class

18  exposes that individual to grave harm.  (<u>See</u> Navarro Pimentel Decl. ¶ 19).  Ms. Pimentel is the

19  mother of three children who has been granted legal status under the Violence Against Women

20  Act.  (<u>Id.</u> at ¶3-6.)  While she applies for work authorization, Ms Pimentel relies on food benefits

21  to feed her family.  (<u>Id.</u> at ¶¶ 14-15.)  Several courts have recognized this irreparable harm

22  particularly with respect to food stamps.  <u>See, e.g.</u>, <u>Haskins v. Stanton</u>, 794 F.2d 1273, 1276-77

23  (7th Cir. 1986); <u>Willis v. Lascaris</u>, 499 F.Supp. 749, 756-59 (N.D.N.Y. 1980)("[T]he

24

consequences of mistakes in the social service arena are more harmful than if they are made in other governmental programs because the ability of people to survive may be jeopardized.") TRO is needed to prevent Plaintiffs and the Class from suffering from irreparable harm.

      d.  <u>Balancing of Hardships/Public Interest</u>

These elements weigh strongly in Plaintiff's favor. The assistance the FAP program provides is vital for Plaintiff and other members of the Class and Due Process Subclass. Plaintiff and other class members are legal immigrants whose income and other financial resources make them dependent on government assistance for food. While the public's interest is served by conserving the resources of the state, the need to the Plaintiff and class members is extreme and substantial. Plaintiff's and classes' suffering "is far more compelling than the possibility of some administrative inconvenience or monetary loss to the government." <u>Lopez v. Heckler</u>, 713 F.2d 1432, 1437 (9th Cir. 1983). In addition, the public interest is served in providing assistance to the Class pending resolution of this dispute. The public has a strong interest in insuring that public programs are administered in compliance with Due Process. The Court finds these two factors weigh in Plaintiffs' favor.

      e.  <u>Bond</u>

Considering the limited resources faced by Plaintiffs and the other class members, the Court waives the bond requirement.

**Conclusion**

The Court GRANTS Plaintiff's motion to certify the Class and Due Process Subclass. If they so choose, Plaintiff is allowed leave to amend the Due Process Subclass. The Court GRANTS Plaintiff's motion for a TRO. The Court ORDERS Defendant not to terminate

1    Plaintiff's or other Class members' state-funded food assistance under the Food Assistance

2    Program for Legal Immigrants on January 31, 2011 or to deny any Class members' application

3    for such benefits after that date because of lack of funding.  The Court also ORDERS Defendant

4    not to terminate or reduce Plaintiff and other Due Process Subclass members state-food

5    assistance until they have been served adequate notice in accordance with Due Process.

6          Parties are requested to meet and confer to determine whether (1) the TRO may be

7    extended beyond fourteen (14) days pursuant to Rule 65(b)(2) of the Federal Rules of Civil

8    Procedure, or (2) additional briefing and hearing on the preliminary injunction is needed.  If the

9    latter, the parties must submit a schedule to the Court by Friday, February 4, 2011.

10         The clerk is ordered to provide copies of this order to all counsel.

11         Dated this 28th day of January, 2011.

12

13

14                                          _____
                                            Marsha J. Pechman
15                                          United States District Judge

16

17

18

19

20

21

22

23

24